**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**Elwood P. BRADY, individually and doing business as Elwood P. Brady, Defendant.**

**Civ. A. No. 66–338.**

United States District Court
W. D. Pennsylvania.

April 11, 1967.

**170**

James G. Johnston, Atty., Dept. of Labor, Chambersburg, Pa., for plaintiff.

William Moldovan, McKeesport, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

Plaintiff has brought this action under the Fair Labor Standards Act of 1938, as amended, to restrain defendant from withholding back wages allegedly due under §§ 6 and 7 of the Act in violation of § 15(a) (2), 29 U.S.C. §§ 206, 207 and 215(a) (2), and to enjoin defendant from alleged continuing violations of the record-keeping provisions of the Act, §§ 11(c) and 15(a) (5), 29 U.S.C. §§ 211(c) and 215(a) (5) and of the regulations pursuant thereto, 29 C.F.R. § 516. Defendant denied all allegations and in a pretrial stipulation admitted only that the activities of his business came within the Act and that the employees upon whose behalf the plaintiff sued were covered by the Act.

From the testimony and the exhibits admitted into evidence, the court makes the following findings of fact.

## FINDINGS OF FACT

1. Defendant, Elwood P. Brady, individually and doing business as Elwood P. Brady, is an individual proprietorship located at 116 Dickie Drive, Irwin, Westmoreland County, Commonwealth of Pennsylvania.

2. Defendant, Elwood P. Brady, individually and doing business as Elwood P. Brady, was at all times relevant engaged in the business of contract transportation or hauling of materials used in the manufacture of steel, said steel being shipped in interstate commerce.

3. The defendant was at all such times engaged in the removal of slag and other waste material from the Duquesne plant of United States Steel and from other plants of United States Steel located in the McKeesport area, which activities are closely related and directly essential to the production of the steel produced in the respective plants.

4. The defendant transported the slag to Duquesne Slag Company, where, after further processing of the unsegregated mass, a portion of the processed slag was used in the construction and reconstruction of interstate highways, streets and roads.

5. The defendant, during the period relevant, employed the following persons for the periods of time indicated: Elmer T. Anthony—3/17/64 to 7/31/64; Wayne Austin—7/8/65 to 7/29/65; Donald W. Brady—7/30/64 to 12/9/65; Ronald Comer—3/17/64 to 12/9/65; Sherman Wayne Friend—3/17/64 to 10/15/64; Roland J. Gallagher—4/29/65 to 11/4/65; Robert L. Guy—11/11/65 to 12/9/65; Russell Keener—10/15/64 to 12/31/64; William E. Lloyd—3/17/64 to 12/9/65; Harry H. Logan—3/17/64 to 12/9/65; Andrew C. Lynch—11/26/64 to 9/30/65; John W. McGraw—4/15/65 to 5/20/65; George McMarlin—3/17/64 to 12/9/65; Ralph M. Plowman—3/17/64 to 4/8/65; Harry Stalowski—5/6/65 to 6/24/65; and Walter Ward—7/8/65 to 12/9/65. During all these times these men were employed as truck drivers in the hauling and transportation activities of the defendant as specified in the preceding paragraphs.

6. The daily time books kept by the defendant, which were delivered to John G. Mondics, investigator for the Secretary, correctly showed the individuals employed by the defendant, the number of days each worked in each workweek and the number of hours worked each day.

7. Comparison of the defendant's general payroll ledger (plaintiff's Ex. B) with the defendant's daily time books (plaintiff's Exs. C–1 through C–5) es-

tablishes that the defendant failed to compensate 11 of his employees for all hours recorded in the daily time books.

8. By reason of the fact that no compensation was paid for certain hours worked as recorded in defendant's daily time book, the following amounts are due the 11 employees: Elmer Anthony—$20.00; Wayne Austin—$12.00; Donald Brady—$44.00; Ronald Comer—$58.25; Sherman Friend—$73.84; William Lloyd—$10.00; Harry Logan—$43.93; Andrew Lynch—$16.00; John McGraw—$20.00; George McMarlin—$25.00; Walter Ward—$12.00; or a total of $335.02 (T., pp. 121–128 and plaintiff's Ex. J).

9. The defendant paid, and all employees received, the same regular rate of $2.00 per hour for all hours worked, regardless of whether the hours were worked in overtime or non-overtime weeks.

10. The defendant failed to pay an overtime premium at the rate of one-and-one-half times the employees' regular rate of $2.00 per hour for all hours worked in excess of forty.

11. As a result of the defendant's failure to pay time-and-one-half for all hours in excess of forty, the following amounts of overtime premium are due the following employees: Elmer Anthony—$167.51; Wayne Austin—$39.00; Donald Brady—$509.26; Ronald Comer—$452.76; Sherman Friend—$959.78; Roland Gallagher—$550.50; Robert L. Guy—$18.50; Russell Keener—$115.00; William Lloyd—$556.50; Harry Logan—$146.69; Andrew Lynch—$947.75; John McGraw—$74.50; George McMarlin—$760.50; Ralph Plowman—$1,375.75; Harry Stalowski—$48.50; and Walter Ward—$549.50, or a total of $7,272.00 is due 16 employees of the defendant.

12. The defendant recorded compensation paid to his employees in four columns designated "regular time earnings" (R.T.E.), "overtime earnings" (O.E.), "other compensation" (O.C.), and "total earnings" (T.E.). Total earnings divided by hours worked always yields a rate of $2.00 per hour, regardless of the number of hours worked. For example:

| | DATE | HOURS WORKED | R.T.E. | O.E. | O.C. | T.E. |
|---|---|---|---|---|---|---|
| George McMarlin | 1/28/65 | 28 | $35.00 | 0 | $21.00 | $56.00 |
| | 3/25/65 | 50 | 50.00 | $18.80 | 31.20 | 100.00 |
| | 6/24/65 | 40½ | 50.00 | .94 | 30.06 | 81.00 |

13. The defendant was told by a representative of the Department of Labor on September 3, 1965 that his records were to be audited for the purpose of determining his compliance or noncompliance with the Act and was advised by the representative of the requirements of the Act (T., p. 246).

14. Following the audit, the defendant was again advised of the requirements of §§ 6, 7, and 11 of the Act by the investigator for the Department of Labor at a meeting on December 30, 1965. As of December 30, 1965, a check of the defendant's records disclosed that the defendant continued to pay his employees in violation of the overtime provisions of the Act (T., pp. 138–141).

## DISCUSSION

Initially, plaintiff sought to prove inter alia, that the defendant had failed to compensate his employees for time spent in washing-up, travel, servicing their trucks, etc., but the court found no evidence to support this claim, and plaintiff withdrew these claims before the trial concluded (T., pp. 353–356). Defendant's counsel, toward the close of the trial, asserted that the applicable Statute of Limitations, 29 U.S.C. § 255, barred the plaintiff from recovering wages due more than two years prior to the filing

of the complaint, that is, before March 17, 1964.[1] Plaintiff likewise withdrew claims for all such wages, reducing the number of employees to whom defendant allegedly owed back wages from the 19 claimed in plaintiff's pretrial statement to 16. New calculations were prepared to show the total wages due each employee with such claims omitted, reducing the total back wages claimed for all employees from $14,174.55, as claimed in the pretrial statement, to $7,607.02, plus interest. Defendant's references [2] to the inclusion of additional time for travel, etc. in the investigator's computations of back wages due are therefore inapposite since all claims for such time were withdrawn and the final calculations submitted by plaintiff reflect their elimination.

Defendant contends that plaintiff has failed to meet his burden of proving back wages due. We cannot concur. Plaintiff's case rests upon data obtained by examination of defendant's daily time records, consisting of day-by-day notebook jottings, and his payroll ledger showing for each employee, according to weekly payroll period, the hours worked and the compensation paid in the four columns headed: "regular time earnings", "overtime earnings", "other compensation" and "total earnings".

Plaintiff's proof that minimum wages were due some employees for uncompensated regular-time hours was established by a comparison of hours worked as recorded in defendant's daily time records with the "hours worked" (and compensated) as shown in his payroll ledger. The investigator's uncontradicted testimony, supported by his work sheets which were admitted into evidence, established discrepancies between these records which—assuming the daily time records to be correct—leave no other possible inference than that employees in some cases worked hours for which they were not compensated. In all other respects plaintiff adopted defendant's time and payroll records as accurate.[3] Defendant steadfastly asserted their accuracy, but has not contested the existence of these discrepancies.

Likewise, defendant has not contested that his actual regular hourly rate of pay was $2.00. From defendant's payroll ledger, it is plain that, regardless of whether an employee worked less or more than 40 hours in a given week, he was paid at the rate of $2.00 per hour. Defendant's method was to compute "regular time earnings" by multiplying all hours in a given workweek amounting to 40 hours or less by the statutory minimum wage of $1.25 per hour (then prevailing), and to compute "overtime earnings" by multiplying any hours worked in excess of 40 by $1\frac{1}{2}$ times the minimum wage. He then added an amount of "other compensation" to produce "total earnings" which, when divided by hours worked, would result in an actual hourly rate of pay of $2.00 for all hours, regular or overtime. Defendant does not contest that this was his method of compensation, nor that it unvaryingly yielded a rate of $2.00 per hour. Hence, there are no factual matters in dispute. The regular (straight time) wages and/or overtime compensation claimed for each employee are susceptible of calculation by the use of uncontroverted figures, namely: (1) the minimum hourly wage of $1.25; (2) the defendant's regular hourly rate of $2.00; and (3) defendant's own daily time records which defendant asserts are correct.

An examination of defendant's argument on the issue of burden of proof leaves no doubt that he challenges not the adequacy of the proof, but the competency of the documentary evidence introduced to establish the amounts claimed. Defendant objects to all documents admitted except Exhibit A, on the ground that

1. The court granted defendant leave to amend his answer to plead the statute of limitations as an additional defense.

2. As contained in ¶¶ 9 and 12 of defendant's requests for findings of fact.

3. That is, plaintiff accepted the records as otherwise accurate when he withdrew claims for travel, etc. time.

plaintiff failed to comply with the court's procedural rule requiring parties to produce and identify their exhibits at pretrial. This the plaintiff did not do, except for Exhibit A, which is merely a summary of the regular, overtime and total wages claimed for each of 19 employees. In addition to Exhibit A, plaintiff offered, and the court admitted over defendant's objections, the defendant's accounting record book including his payroll ledger (Ex. B); five notebooks containing defendant's daily time records for his employees for the relevant period (Exs. C-1 through C-5); and the work sheets prepared by plaintiff's investigator from data obtained by examination of defendant's records (Exs. I and J).

Defendant contends that plaintiff's evidence left the amounts owed to the employees conjectural and unproved. There is no doubt that the aforesaid exhibits were essential to the plaintiff's proof. Exhibits B and C-1 through C-5 were the source of information regarding hours worked and compensation paid and hence plaintiff's basis for computing the claims. These were defendant's own records and defendant does not contest their accuracy; in fact, he affirmatively asserts it. Defendant cannot argue that by plaintiff's failure to identify them at pretrial, defendant was surprised or otherwise prejudiced by their admission. Defendant could expect these documents to be part of the evidence. He must have known that if he did not introduce them, plaintiff would.

The focus of defendant's objections obviously is upon Exhibit I 1–25 and J 1–20 consisting of the work sheets and calculations prepared by the plaintiff's investigator. Exhibit I was prepared by plaintiff's investigator prior to trial to compute the back wages claimed for each employee. Exhibit J was prepared by him at the direction of the court during trial when, as already indicated, the defense raised the Statute of Limitations, and the court advised plaintiff's counsel that in the court's opinion there was no evidence to sustain the plaintiff's claims for additional hours for travel time, etc.

as inserted by the plaintiff's investigator into his work sheets. Thus, Exhibits I and J were prepared in identical manner, and Exhibit J merely reflects a reduction in amounts claimed by the elimination of additional hours inserted for travel time, etc., and by plaintiff's withdrawal of claims barred by the Statute of Limitations.

Defendant objects that Exhibit I, the investigator's work sheets, was not available to him prior to trial. Since the data originated in defendant's own records, defendant's sole basis for objection can be possible inaccuracies in the investigator's compilation and calculations from these work sheets. But defendant does not assert that the investigator's compilations are inaccurate nor request findings of fact contrary to the investigator's calculations. While defendant contends that the plaintiff's claims are conjectural and unproved, it is plain that defendant's argument rests squarely on his objections to the admission of Exhibit I into evidence contrary to the letter of the local rule governing identification of exhibits at pretrial. With Exhibits I and J in evidence, there is nothing conjectural or uncertain about these amounts or how plaintiff arrived at them. The defendant has had adequate time during and since the trial to check the accuracy of these work sheets.

The court is satisfied that defendant's objections to the admission of Exhibits I and J rest on technical rather than substantive grounds. The introduction of these exhibits greatly facilitated the testimony and substantially shortened trial time, without, we think, placing defendant at any material disadvantage. The alternative was recourse to defendant's original records for proof, item by item, of hours worked and compensation paid, which would have meant a needlessly protracted trial to arrive at the same elements of proof. Since defendant has not contended that the evidence obtained from Exhibits I and J is inaccurate, or could have been shown to be inaccurate had defendant had proper notice, we find no basis for defendant's

contention that he was placed at a disadvantage by their admission. We think the work sheets were properly admitted in evidence.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter of this cause (29 U.S.C. § 217).

2. The defendant's employees are engaged in the contract hauling of materials used in the manufacture of steel for shipment in interstate commerce, thus placing the defendant's employees in the production of goods for interstate commerce, within the meaning of the Act.

3. The defendant's employees are engaged in the removal of slag and other waste materials from steel plants, activities closely related and directly essential to the production of steel, therefore placing the employees in activities closely related and directly essential to the production of goods for commerce.

4. The defendant's employees are engaged in the transportation of unsegregated slag for further processing for use in the construction and reconstruction of interstate highways, streets, and roads, thus placing the defendant's employees in interstate commerce and in the production of goods for interstate commerce, within the meaning of the Act.

5. The actual regular rate of the defendant's employees, was, as a matter of law, $2.00 per hour. Bay Ridge Co. v. Aaron, 334 U.S. 446, 461, 464–466, 68 S. Ct. 1186, 92 L.Ed. 1502 (1948).

6. The defendant violated the provisions of § 11(c) and Regulation 516.2, 29 C.F.R. § 516.2, by failing to record (a) the actual regular hourly rate of pay for any week when overtime was worked and overtime excess compensation was due under § 7(a) of the Act; (b) the basis on which wages were paid; and (3) the total overtime excess compensation due for the workweek for any overtime worked.

7. The defendant failed to properly compensate certain employees in accordance with the minimum wage provisions of § 6 of the Act for certain hours worked as recorded in defendant's daily time records, said withholding of back wages totaling $335.02 to 11 employees.

8. The defendant violated the overtime provisions of § 7 of the Act by failing to pay certain of his employees time-and-one-half their regular hourly rate of pay for hours worked in excess of 40 in any workweek, said withholding of back wages totaling $7,272.00 to 16 employees.

9. The plaintiff is entitled to an injunction restraining the defendant from the further withholding of $335.02 due to 11 employees for hours worked, as recorded in defendant's daily time records, but uncompensated as shown by defendant's payroll ledger.

10. The plaintiff is entitled to an injunction restraining the defendant from the further withholding of $7,272.-00 due to 16 employees for overtime excess compensation.

11. The plaintiff is entitled to interest on the accrued back wages owing to employees at the rate of 6 per cent from the median point of the employee's employment.

12. The plaintiff is entitled to an injunction enjoining the defendant from future violations of the Fair Labor Standards Act, specifically, §§ 6, 7 and 11(c).